UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL DARLING, True Name and Person,

Plaintiff,

v.

1:26-CV-0500 (MAD/ML)

FEDERAL BUREAU OF INVESTIGATION,

Defendant.

---

APPEARANCES: OF COUNSEL:

MICHAEL DARLING
Plaintiff, *Pro Se*
Coxsackie Correctional Facility
Post Office Box 999
Coxsackie, New York 12051

MIROSLAV LOVRIC, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

Plaintiff Michael Darling ("Plaintiff") commenced this *pro se* action against Defendant Federal Bureau of Investigation ("Defendant") by filing a complaint together with a second amended application to proceed *in forma pauperis* ("IFP") and an inmate authorization form. (Dkt. Nos. 1, 14, 15.) For the reasons set forth below, Plaintiff's second amended IFP application is granted and I recommend that the Complaint be dismissed in its entirety.

## I. BACKGROUND

Construed as liberally[1] as possible, the Complaint alleges violations of Plaintiff's rights by Defendant. (*See generally* Dkt. No. 1.)

More specifically, the Complaint alleges that for a period of approximately two years, Plaintiff contacted Defendant and tried to get Defendant to investigate crimes within Defendant's jurisdiction but Defendant has failed to take any action. (Dkt. No. 1 at 4.) The Complaint alleges that Defendant is "required by law to investigate [crimes] once made aware of the crimes." (*Id.*)

As relief, Plaintiff seeks an investigation by Defendant and that criminal charges be pursued. (*Id.*)

Plaintiff seeks leave to proceed IFP. (Dkt. No. 14.)

## II. PLAINTIFF'S SECOND AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently

---

1 The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2 Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 14 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District.[3] (Dkt. No. 15.)

Accordingly, Plaintiff's second amended application to proceed with this action IFP is granted.[4] (Dkt. No. 14.)

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis

---

[3] Plaintiff is reminded that proceeding IFP is always a privilege, not an unqualified right. Misuse of the IFP process by a litigant, such as repetitive filing of frivolous lawsuits, may result in the denial of a request to proceed IFP.

[4] Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed in its entirety for the following two reasons.

First, to the extent that Plaintiff's claims are construed as alleging that Defendant was negligent when it failed to investigate his complaints, those claims would be pursuant to the Federal Tort Claims Act ("FTCA"). (*See generally* Dkt. No. 1.) However, claims pursuant to the FTCA are to be asserted against the United States, not Defendant, which is a federal agency. *Alan v. U.S. Dep't of Justice*, 716 F. Supp. 3d 67, 69 (W.D.N.Y. Feb. 12, 2024) (citing, *inter alia*, *Mayes v. United States Postal Service,* 19-CV-0355, 2020 WL 2465086, at *5 (W.D.N.Y. May 13, 2020) ("the FTCA provides a limited waiver of the United States' sovereign immunity and does not authorize lawsuits against federal agencies")).

Second, to the extent that Plaintiff's claims are construed as asserting that he was deprived of due process under the law by Defendant's alleged failure to investigate his complaints, "[t]here is . . . no constitutional right to an investigation by government officials. Thus, there is no constitutional violation where the government refuses to investigate a crime . . . ." *Ehlers v. C.I.A.*, 15-CV-0387, 2015 WL 3637431, at *3 (N.D.N.Y. June 10, 2015) (quotations and citations omitted); *see also Kilcher v. Albany Cnty.*, 19-CV-0158, 2019 WL 911192, at *4 (N.D.N.Y. Feb. 25, 2019) ("Because plaintiff has no constitutional right to an investigation, this claim against defendant . . . fails."), *adopted*, 2019 WL 1516933 (N.D.N.Y. Apr. 8, 2019); *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) ("there is no constitutional violation where the government refuses to investigate a crime [or] allegations of patent fraud"). As a result, Plaintiff has failed to allege a violation of his due process rights based on Defendant's alleged failure to investigate. *See also Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Walker v. CIBC Ltd.,* 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal

prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *McFadden v. Ortiz,* 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (D'Agostino) ("[T]here is no private right of action to enforce either state or federal criminal statutes.").

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

---

5 *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

The issue with Plaintiff's claims against Defendant is substantive such that a better pleading will not cure it. As a result, I recommend that Plaintiff's Complaint be dismissed without prejudice but without leave to replead.

PLAINTIFF IS ADVISED THAT HE SHOULD NOT SEEK TO FILE A MOTION TO AMEND HIS COMPLAINT UNTIL UNITED STATES DISTRICT JUDGE D'AGOSTINO RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFF'S COMPLAINT. ANY AMENDED COMPLAINT OR MOTION TO AMEND BEFORE JUDGE D'AGOSTINO'S DECISION WITH RESPECT TO THIS COURT'S RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT BE CONSIDERED BY THE COURT. As noted below, however, Plaintiff may file objections to this Court's recommendations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's second amended application to proceed *in forma pauperis* (Dkt. No. 14), is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 15) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 15) to the Financial Deputy of the Clerk's office; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED without prejudice but without leave to replead** pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: October 29, 2026
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

6 The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

7 If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional Facility; Joseph Williams, Warden, Lincoln Work–Release Center; Francis J. Herman, Senior Parole Officer Interstate Bureau; T. Stanford, Senior Parole Officer; Deborah Stewart, Parole Officer; John Doe # 1, Parole Agent, Watertown Correctional Facility; John Doe # 2, Parole Agent, Lincoln Work Release Center; Susan Bishop, Director of Interstate Compact, South Carolina; Cecil Magee, Parole Officer, South Carolina; Frank Barton, Parole Officer, South Carolina; John McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The Capitol Albany, NY, for defendants Peters, Herman Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant Attorney General, Carl N. Lundberg, Chief Legal Counsel, South Carolina Department of Probation, Columbia, SC, for defendants Bishop, Magee, Barton, McMahan, and Stanford, Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

***1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Daniel Scanlon, Jr., duly filed on April 17, 1997. Following ten days from the service thereof, the Clerk has sent me the entire file, including any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil rights action on November 17, 1995. On February 12, 1996, Magistrate Judge Scanlon ordered Brown to submit an amended complaint alleging the specific acts committed by the individuals named as defendants which Brown claimed violated his constitutional rights. Brown filed an amended complaint on March 21, 1996. In his amended complaint, Brown alleged that defendants violated his rights under the Eighth and Fourteenth Amendments by failing to process properly his interstate compact paperwork, resulting in Brown being imprisoned pursuant to a parole hold when in fact he had never violated the conditions of his parole. For a more complete statement of Brown's claims, see his amended complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On August 19, 1996, defendants Bishop, Magee, Barton, and McMahan made a motion to dismiss the complaint against them or, in the alternative, for summary judgment. Dkt. No. 20. On October 17, 1996, defendants Herman, Stewart, and Stanford made a motion to dismiss for failure to state a claim. Dkt. No 34. On April 17, 1996, Magistrate Judge Scanlon recommended that all defendants' motions to dismiss be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the magistrate judge's report-recommendation, having been granted additional time in which to do so. Dkt. No. 52. In addition, Brown filed on June 9, 1997, a motion for leave to file a second amended complaint and a copy of his proposed amended complaint. Dkt. No. 53. I turn first to the last motion filed, Brown's motion for leave to amend his complaint a second time.

Brown seeks to file a second amended complaint "setting forth in detail the personal involvement of each defendant and how their acts of commission and omission served to deprive plaintiff of Constitutionally secured rights." Dkt. No. 53. The district court has discretion whether to grant leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

***2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

no clear error on the face of the record in order to accept the recommendation").

***3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

***4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

***5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* *LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See* *Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

***6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

***7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1 I note, however, that the report-recommendation would survive even *de novo* review.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,
v.
BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION*[1]

PITMAN, United States Magistrate Judge.

***1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

## I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

## II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request."[2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

## III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> ***2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

> malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson*[3] *v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

    - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

- Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

***3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009).[4]

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also* *Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury,

or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury”). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS ***WILL*** RESULT IN A WAIVER OF OBJECTIONS AND ***WILL*** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

## Footnotes

1 At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

2 Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

3 It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services (“DOCS”) is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

4 Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

5 Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 3637431
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Matthew R. EHLERS, Plaintiff,
v.
CENTRAL INTELLIGENCE AGENCY;
David B. Buckley, Director; Michael E.
Horowitz, Inspector General, Defendants.

No. 6:15–cv–387 (MAD/ATB).
|
Signed June 10, 2015.

**Attorneys and Law Firms**

Matthew R. Ehlers, Amsterdam, NY, pro se.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

## I. INTRODUCTION

***1** Plaintiff commenced this civil rights action asserting claims against the Central Intelligence Agency ("CIA"), the director thereof, and the Inspector General ("IG") of the Department of Justice ("DOJ"). *See* Dkt. No. 1. In an April 6, 2015, Order and Report–Recommendation, Magistrate Judge Baxter conducted an initial review of the complaint and granted Plaintiff's motion for leave to proceed in forma pauperis ("IFP") for filing purposes only, recommended that the complaint be dismissed in its entirety with prejudice, and denied Plaintiff's motion to appoint counsel. *See* Dkt. No. 5 at 11.

Currently before the Court is Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff's objections thereto, and Plaintiff's amended complaint, which was filed after the issuance of the Order and Report–Recommendation.

## II. BACKGROUND

Plaintiff's complaint is very short, containing limited facts, but brings this action against the CIA and DOJ under 18 U.S.C. §§ 241–242 & 245 for having failed to investigate alleged reports of harassment that he and his family suffered due to their "whistleblowing" activities. *Id.* at 3, 8. Plaintiff appeared to be requesting injunctive or mandamus relief. *Id.* at 6. The Magistrate Judge found Plaintiff failed to plausibly allege that Defendants denied him due process by failing to conduct an investigation or prosecution and that Plaintiff has no right, constitutional or otherwise, to an investigation or prosecution. *Id.* at 8 (citing *Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008)). Magistrate Judge Baxter concluded that Plaintiff's complaint amounts to conclusory allegations which are insufficient to state a constitutional claim. *Id.* at 9 (citing *Barr v. Adrams,* 810 F.2d 358, 363 (2d Cir.1987)). The Magistrate Judge then held that any attempt by Plaintiff to amend his complaint would be futile, and he would still be unable to state a federal claim. *Id.* at 10.

Currently before the Court are Magistrate Judge Baxter's Order and Report–Recommendation, and Plaintiff's objections thereto. Additionally pending before the Court is Plaintiff's amended complaint, which was filed after the issuance of the Order and Report–Recommendation.

## III. DISCUSSION

### A. Initial review

Section 1915(e) (2)(B) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1] Thus, although The Court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.[2]

***2** When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ... prepare an adequate defense," and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678 (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding pro se, waives any challenge to the report on appeal. *See* *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A pro se litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See* *Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a pro se party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

***3** As Magistrate Judge Baxter correctly determined, Plaintiff's complaint does not state a valid claim for which relief can be granted and lacks substance. As Magistrate Judge Baxter discussed, Plaintiff's complaint is not of substance, but rather conclusory statements and "threadbare recitals of the elements of a cause of action." *See* *Twombly,* 550 U.S. at 555.

Plaintiff was not denied due process under 18 U.S.C. § § 241–242 & 245 or when the agencies contacted failed to conduct an investigation. " 'There is ... no constitutional right to an investigation by government officials.' Thus, there is no constitutional violation where the government refuses to investigate a crime...." *Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008); *Lewis v. Gallivan,* 315 F.Supp.2d 313, 317 (W.D.N.Y.2004). Additionally, it is well established that there is no private right of action under 18 U.S.C § § 241–242 & 245. *See, e.g.,* *Dugar v. Coughlin,* 613 F.Supp. 849, 852 n.1 (S.D.N.Y.1985); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.N.Y.1994); *Powers v. Karen,* 768 F.Supp. 46, 51 (E .D.N.Y.1991); *Sauls v. Bristol–Myers Co.,* 462 F.Supp. 887, 889 (S.D.N.Y.1978). The Magistrate Judge correctly determined that Plaintiff has no cause of action and properly dismissed the claim because there is no constitutional right to an investigation or a private right of action under 18 U.S.C. 241, 242 & 245.

Furthermore, the doctrine of sovereign immunity bars Plaintiff's suit for damages against the CIA "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity." *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.N.Y.1994).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Having reviewed the Report, Recommendation, and Order and Plaintiff's objections thereto, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff's claims should be dismissed.

**B. Plaintiff's Amended Complaint**

In his amended complaint Plaintiff states that there has been “ongoing choreographed criminal attacks” directed at him and his family, which were arranged by “corrupt Federal agents from the CIA .” *See* Dkt. No. 6 at 3. The amended complaint states these attacks include: “efforts to harass, defame, discredit, sabotage, stalk (including gang stalking), setup, and block many inherent rights.” *Id.* It also states there were efforts “to create general chaos,” and “to make us feel bad.” *Id.* Plaintiff includes a list of incidents and events in his amended complaint that reference occurrences from 2002 to 2011. In this list Plaintiff makes claims including but not limited to: “odd events,” “bogus tickets,” “chemicals or contaminnets [sic] being put in to [his] food,” “sabotage [to his] own consulting/financial services business,” “politics and case fixing,” “electronic directed energy weapon (dew) attacks,” “corrupt gravy train,” and “civil rights blackout.” *Id.* at 4–10. However, all of the events, occurrences, and claims lack substance and are mere conclusory statements.

***4** In his amended complaint, Plaintiff clarifies he is seeking monetary damages, injunctive monetary relief, punitive damages, and “an immediate and thorough criminal investigation and prosecutions.” *Id.* at 10. Plaintiff states that he seeks mandamus relief under 28 U.S.C. § 1361, and restates he seeks relief under 18 U.S.C. §§ 241–242 & 245. *Id.* at 11.

Having reviewed the amended complaint, the Court finds that Plaintiff has failed to plausibly allege that he is entitled to any of the relief he seeks. As discussed above, Plaintiff's claims must be dismissed because they are entirely conclusory, lack an arguable basis in law or fact, and fail to state a claim on which relief may be granted. *See Ashcroft,* 556 U.S. at 678; *Neitzke,* 490 U.S. at 325; 28 U.S.C. § 1915(e)(2)(B)(ii). Additionally, as discussed above, there is no private right of action under 18 U.S.C. §§ 241–242 & 245. *See, e.g., Dugar,* 613 F.Supp. at 852 n.1. Again, there was also no constitutional violation because there is no right to an investigation. *See, e.g., Bernstein,* 591 F.Supp. at 460.

Based on the foregoing, the Court finds that Plaintiff's amended complaint fails to set forth any non-frivolous causes of action. Since permitting additional amendment would be futile, Plaintiff's amended complaint is dismissed with prejudice.

In view of the frivolous nature of Plaintiff's claims, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**IV. CONCLUSION**

After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's April 6, 2015 Order and Report–Recommendation is **ADOPTED;** and the Court further

**ORDERS** that Plaintiff's complaint and amended complaint are **DISMISSED with prejudice;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order.

**IT IS SO ORDERED.**

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Matthew R. Ehlers. (Dkt. No. 1) Plaintiff has also filed an application to proceed in forma pauperis (“IFP”) and a motion for appointment of counsel. (Dkt.Nos.2, 3). For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

**I. *IFP Application***

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

***5** A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). Although plaintiff's application is technically incomplete, this court will assume for purposes of this order that plaintiff meets the financial criteria to proceed IFP. [1]

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. *Complaint*

The complaint is very short and contains limited facts. (Complaint "Compl.") (Dkt. No. 1). It is divided into three "causes of action." (Compl. at 1–2). Plaintiff names the Central Intelligence Agency ("CIA"); CIA Director, David B. Buckley; [2] and Inspector General ("IG") Michael E. Horowitz. [3] Plaintiff alleges that on May 6, 2011, he sent a letter to defendant Buckley outlining facts and events which he alleges represent

> such serious and aggregious [sic] criminal activity and allegations, that it should have prompted an immediate appropriate response and internal investigation into the associated misconduct, criminal politics, corporate crime and conspiracy against rights (Title 18 section 241 and 242, 245).
>
> ***6** (Compl. at 1). Plaintiff claims that he never received a response from defendant Buckley, which plaintiff believes is a violation of due process. (*Id.*) Plaintiff claims that the failure of defendant Buckley to respond "furthered the conspiracy and attacks against [his] family and [him], [his] career, [their] rights as well as general peace and well being." (Compl. at 2).

Plaintiff's second cause of action states that he also contacted the Office of the Inspector General ("OIG") with the same information as reported to the CIA. (*Id.*) Plaintiff states that he filed an "official complaint," but he received an "extremely bizarre" response which "completely ignored the facts and events set forth and declared the matter closed without any due process or investigation whatsoever." (*Id.*)

Plaintiff's third cause of action states that he again contacted OIG on July 17, 2012, August 3, 2012 to request "and demand" an investigation into the "obvious heinous crimes," corruption, and "criminal politics." (*Id.*) Plaintiff also "voiced dismay" over the lack of proper response to his correspondence. Plaintiff states that he received a "similarly neglectful and bizarre response" from OIG on August 10, 2012. On September 4, 2012, he contacted OIG "one final time" to inform "them" of his intent to file a federal action. Plaintiff claims that there is obvious coercion, manipulation, blackmailing, bribery, case-fixing/tampering, corporate bartering, and "cronyism" at several levels. Plaintiff is not sure who is responsible for the handling or mishandling of the correspondence that he and his family have sent over the years, but he is filing this federal action, "having exhausted all other remedies." (Compl. at 2).

Plaintiff requests an "immediate and thorough criminal investigation into the crimes, individuals, entities and allegations set forth in the attached correspondence [4] as well as the associated misconduct, criminal politics and corruption." (*Id.*) Plaintiff also appears to be asking for

monetary relief, due to "lack of due process and lack of enforcement." (*Id.*)

## III. *Venue*

### A. Legal Standards

Proper venue in civil actions in which the defendants are officers or employees of the United States is as follows:

> (1) In general.—A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1). However, venue in actions bringing claims against defendants in their "individual capacities" is governed by 28 U.S.C. § 1391(b) which provides that

> ***7** A civil action may be brought in—
>
> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas,* —— U.S. ——. 134 S.Ct. 568, 577 (2013).

### B. Application

In this case, plaintiff has named CIA IG, David B. Buckley and DOJ IG, Michael E. Horowitz. Plaintiff's first request appears to be in the nature of injunctive or mandamus relief. He states that he is requesting "an immediate and thorough criminal investigation." (Compl. at 2). To the extent that he names the IGs in their official capacities for equitable relief, venue is proper in the Northern District of New York based upon 28 U.S.C. § 1391(e)(1)(C) because plaintiff resides in this district, and no real property is alleged to be involved in the action.

To the extent that plaintiff seeks monetary relief from either director individually [5] for constitutional [6] violations, the only basis upon which plaintiff could bring the action is *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) which allows citizens to file damage claims for constitutional violations committed by federal agents or employees, acting under color of federal law. *See Arar v. Ashcroft,* 585 F.3d 559, 571–72 (2d Cir.2009) (discussing history of *Bivens* actions).

Under section 1391(b), a claim against the defendants "individually" would normally be brought in Washington, D.C., where the alleged unconstitutional acts took place, [7] or where the defendants reside, which is unlikely the Northern District of New York. However, in a case involving multiple claims, dismissal of an improperly venued claim is not warranted if " 'it is factually related to a properly venued claim and the claims could be considered one cause of action with two grounds of relief.' " *Mikhaylov v. United States,* 29 F.Supp.2d 260, 273–74 (E.D.N.Y.2014) (quoting *United States Envtl. Prot. Agency ex rel. McKeown v. Port Auth. of N.Y. & N.J.,* 162 F.Supp.2d 173, 183 (S.D.N.Y.2001), *aff'd sub nom. McKeown v. Del. Bridge Auth.,* 23 F. App'x 81 (2d Cir.2001)).

In this case, the court will consider plaintiff's official capacity and individual capacity claims sufficiently related so that venue is proper in the Northern District of New York. Notwithstanding proper venue, this case must be dismissed.

## IV. *Right to Investigation*

### A. Legal Standards

Plaintiff has no constitutional right to an investigation of any sort by government officials. *See Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008); *Lewis v. Gallivan,* 315 F.Supp.2d 313, 317 (W.D.N.Y.2004) (citing cases). In

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

order for a constitutional violation to have occurred, the investigation itself must have resulted in the deprivation of a constitutional right. *Faison v. Hash,* 03–CV–6475P, 2004 WL 944523, at *6 (W.D.N.Y. April 23, 2004) (citation omitted). It is also well-settled that there is no private right of action under federal criminal statutes such as 18 U.S.C. §§ 241 or 242. *Robinson v. Overseas Mil. Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994); *Marshall v. Webster Bank, N.A.,* 3:10–CV–908, 2011 WL 219693, *8 (D.Conn. Jan. 21, 2011) (citing cases); *Vasile v. Dean Witter Reynolds, Inc.,* 20 F.Supp.2d 465, 478 (E.D.N.Y.1998), *aff'd,* 205 F.3d 1327 (2d Cir.2000) (citations omitted).

**B. Application**

***8** Plaintiff is suing defendants because the CIA and the DOJ failed to investigate or prosecute after plaintiff allegedly sent them information, reporting the harassment that he and his family have suffered due to their “whistleblowing” activities. Because plaintiff has no right, constitutional or otherwise, to an investigation or prosecution, the defendants did not deny him due process by failing to conduct either one. [8] The court would also point out that the complaint itself does not “detail” any of the specific facts of the alleged harassment. [9] He simply states that in 2011 and 2012, defendants failed to investigate his allegations. Plaintiff makes only general allegations of the corruption he wished to have investigated. He alleges “attacks against his family,” conspiracies, case-fixing, bribery, corporate bartering, and the like. (Compl. at 2). Conslusory allegations are insufficient to state a constitutional claim. [10] *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

Thus, this court must recommend dismissal of plaintiff's complaint for failure to state a claim because plaintiff is not entitled to, nor can he “demand” an investigation.

**V. *Opportunity to Amend***

Generally, when the court dismisses a pro se complaint *sua sponte,* the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In this case, the court finds that any attempt by the plaintiff to amend this complaint would be futile, and he would still be unable to state a federal claim.

**VI. *Appointment of Counsel***

**A. Legal Standards**

There is no bright-line test for determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). A number of factors must be carefully considered by the court in ruling upon the motion. The court must first assess whether the indigent's claims seem likely to be of substance. If so, the court then considers:

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986)). Each case must be decided on its own facts, and the court may consider any or all of the above factors in its determination. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D .N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

**B. Application**

Plaintiff has contacted multiple attorneys who have refused to take his case. (Dkt. No. 3). This court finds that plaintiff's complaint does not state a claim, and that he will be unable to amend to state a claim because he simply has no right to the relief that he requests. Therefore, the complaint lacks substance, and the plaintiff cannot meet the first requirement for appointment of counsel. The court need not proceed with the rest of the above analysis. Plaintiff's motion for appointment of counsel is denied.

***9 WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY,** and it is

**RECOMMENDED,** that this action be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii) for failure to state a claim, and it is

**ORDERED,** that plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Dated: April 6, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3637431

## Footnotes

1 To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

2 "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer,* No. 9:07–CV–1241, 2008 WL 268215, *1 n.3 (N.D .N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources[.]" *Neitzke,* 490 U.S. at 327.

1 In his application, plaintiff states that he is currently unemployed. He then states that in the past twelve months, he has received income from "business, profession or other self employment," but does not state the source of the money, the amount received, or what he expects to receive. (Dkt. No. 2 at 1). He also states that his children "help" him by giving him $25.00 to $30.00 per week, but on the next page, he states that he supports his children by contributing $50.00 to $192.00 per week. (Dkt. No. 2 at 1–2). These omissions and inconsistencies are not explained, but as stated above, the court will find plaintiff financially eligible for the limited purpose of this Order and Report–Recommendation.

2 David Buckley is the CIA's Inspector General, not the Director of the CIA. The current Director of the CIA is John Brennan. https:// www.cia.gov/news-information/pressreleases-statements/index. Plaintiff's error does not affect this court's decision.

3 Michael E. Horowitz is the IG of the Department of Justice ("DOJ"). Plaintiff does not specify defendant Horowitz's agency in the complaint.

4 There is no correspondence attached to the complaint. There are many emails, attached to plaintiff's motion for appointment of counsel. (Dkt. No. 3). The emails appear to be excerpts of correspondence that plaintiff sent to various attorneys in an attempt to encourage counsel to take his case. In one of the emails there is a chronology of events that plaintiff sent to counsel which may further explain the conduct of which plaintiff complains. (Dkt. No. 3 at CM/ECF pp.24–29). I will discuss the facts stated in plaintiff's email below as appropriate to clarify plaintiff's claims.

5 To the extent that plaintiff seeks to name the CIA as a defendant, sovereign immunity would prevent a suit for damages directly against the agency. As a federal agency, the CIA is protected against suit by the sovereign immunity afforded to the United States. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Cir.1994). Absent an unequivocal waiver of that sovereign immunity in statutory text, this court would lack subject matter jurisdiction. *Adeleke v. United States,* 355 F.3d 144, 150 (2d Cir.2004); *Marakova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). The United States has not waived its sovereign immunity with respect to constitutional claims seeking money damages that are brought directly against the United States or an agency thereof. *Robinson,* 21 F.3d at 510.

6 Plaintiff claims he was denied due process as a result of the defendants' failure to investigate his allegations. (Compl. at 1–2).

7 The refusal to investigate plaintiff's claims presumably occurred in defendants' offices, neither of which are in the Northern District of New York.

8 In his motion for appointment of counsel, plaintiff also mentions the words "equal protection." (Dkt. No. 3 at 29). The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike. *Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.' " *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). In his complaint, there is absolutely no indication that anyone was treated differently than plaintiff by these defendants. There is no indication that another similarly situated individual obtained an investigation by defendants under similar circumstances. Thus, to the extent that plaintiff's motion for appointment of counsel could be interpreted as in some way raising such an equal protection claim in plaintiff's complaint, the court would still recommend dismissal.

9 The court is merely noting these facts. This recommendation is based *only* upon the fact that plaintiff is not entitled to an investigation of any sort, not that he has not detailed his claims of harassment.

10 The court does note that a review of plaintiff's motion for appointment of counsel (addressed below) does contain a "timeline of events/incidents" that plaintiff sent to one attorney in an effort to obtain counsel. (Dkt. No. 3 at CM/ECF pp.24–29). The incidents described by plaintiff begin in 2002 and span occurrences in various states through 2011. The court will not recite all the facts as stated by plaintiff in his description of the relevant facts, but would only note some of the statements. In 2002, police in New Jersey engaged in "odd behavior." (Dkt. No. 3 at 24). In 2003, references were made to plaintiff that the "mob" was after him, including direct statements from coworkers at "Meow–Mix Company" bragging about their corrupt law enforcement friendships. (*Id.* at 25). In 2004, while working at the Hartz Mountain Corporation, plaintiff's supervisor bragged of CIA connections, how he can "set" plaintiff up, and bragged about "having hacked" plaintiff's email. (*Id.*) There are also allegations of occurrences between 2003 and 2008. In 2008, plaintiff claims that he was offered a job in Albany, which turned out to be a "scam," and the company closed its Albany office within two weeks after plaintiff moved there. (*Id.* at 26). Plaintiff alleged that there was "reason to believe" that this was done to plaintiff "intentionally." (*Id.*) Plaintiff mentions a hit-and-run in 2009 and a DWI in 2010 (although plaintiff concedes that he had too much to drink, but is convinced that "they seemed to be ready for it." (*Id.* at 27). Notwithstanding all these incidents, plaintiff never specifies who may be responsible or to what "criminal group" he is referring. (*Id.* at 28). Even including all the facts as stated in plaintiff's motion for appointment of counsel, his rights would not have been violated when the CIA or any of the three defendants refused to investigate his "case" in 2011 and 2012.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 911192
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brittany KILCHER, Plaintiff,
v.
ALBANY COUNTY, et al., Defendants.

1:19-CV-158 (BKS/ATB)
|
Signed 02/25/2019

**Attorneys and Law Firms**

BRITTANY KILCHER, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

***1** The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Brittany Kilcher. (Dkt. No. 1) Plaintiff has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 2). For the following reasons, this court will grant plaintiff's IFP application. However, the court will also recommend dismissal of plaintiff's claims without prejudice in part and dismissal with prejudice in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

**I. IFP Application**

A review of plaintiff's IFP application shows that she declares she is unable to pay the filing fee. (Dkt. No. 2). The court agrees and finds that plaintiff is financially eligible to proceed IFP.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**

The complaint in this action is confusing. Plaintiff lists names in the caption of her IFP application that she does not list in the caption of her complaint or in the section of the form-civil rights complaint which requires the plaintiff to list defendants. (*Compare* Dkt. No. 2 at 1 *with* Dkt. No. 1 at 1 and ¶ 3(a)-3(c) ). In addition, plaintiff attaches a "Notice of Intention to File Claim" ("Notice of Claim") that is addressed to the "Albany County Corporation Counsel, Sheriff Craig Apple, and David Soares." [1] (Complaint ("Compl.") at CM/ECF pp.5-9). The defendants listed in the Notice of Claim match the defendants who are listed in the IFP application. However, plaintiff has provided proposed summonses only for defendants Albany County, Albany County Sheriff, and Investigator Andrus. (Dkt. No. 2-1-2-3). Thus, for purposes of this Order and Report-Recommendation, the court will consider that plaintiff's section 1983 complaint form, which matches the proposed summonses, list the only defendants who plaintiff wishes to sue in this federal action.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

***2** There are many individuals mentioned in the body of the Notice of Claim who are not mentioned in the form-section 1983 complaint, although the Notice of Claim appears to slightly clarify plaintiff's claims. Plaintiff references the Notice of Claim in her form-section 1983 claims, thus, the court will read the two documents together, even though the court only considers as defendants, the three mentioned in the caption of the complaint and the summonses. The court will attempt to summarize the various issues that plaintiff may be trying to raise in this action. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

As stated above, the form-complaint names three defendants: Craig Apple/Albany County Sheriff's Department, Albany County, and Investigator Corey Andrus. (Compl. at 1, ¶ 3(a)-3(c) ). Craig Apple is listed as the Sheriff of Albany County. (Compl. ¶ 3(a) ). Plaintiff alleges that on October 4, 2018, she was subjected to discrimination, slander, and libel, due to "PTSD," and she was terminated from her "pro bono" work with the Sheriff's Department and Albany County. (Compl. ¶ 4). In the Notice of Claim, [2] plaintiff alleges that she was "turned away" from this volunteer activity, [3] which "undoubtedly" would result in "loss of income in excess of 1,000,000,000 dollars as a Criminal Justice graduate and future attorney or police officer in the area." (Notice of Claim at 2). She does not associate this conduct with any particular individual defendant in any of her documents. Her first cause of action is entitled "Discrimination, Slander." She then states that she was "discriminated against in and terminated from" her "Pro Bono" work. (Compl. ¶ 5, First Cause of Action). Plaintiff states that "Investigators" harassed her family with slander against plaintiff. (*Id.*)

Next, plaintiff states that between October 14, 2018 and October 18, 2018, she was incarcerated in the Albany County Correctional Facility ("ACCF"). Plaintiff claims that she does not remember being arrested, but that she "became aware" that prior to her incarceration, she had been drugged and sexually assaulted. (Compl. ¶ 4). In her Notice of Claim, plaintiff states that she became aware of this fact on October 14, 2018, after she became violently ill while she was incarcerated. Plaintiff alleges that she began to remember the facts of the night before at approximately 3:30 p.m. Plaintiff's Notice of Claim details how she reported her beliefs to one of the officers, and how poorly she was treated by the staff at ACCF. Plaintiff states that she requested a "Rape Kit," several times from a corrections officer, but that she was initially ignored. Plaintiff states that the officer finally told a lieutenant, who stated that he would report the information to "medical," but "hours" passed before anyone helped plaintiff. (Notice of Claim at 2). Plaintiff stated that she sat "in agony" with stomach pain, "crying and more." (*Id.*)

When "medical" arrived, plaintiff asked about the Rape Kit, but was told that no one requested it from the medical staff. (*Id.*) Although the RN from "medical" was respectful, the officers who were escorting the RN abused plaintiff verbally. Plaintiff states that although she was eventually brought to the hospital, [4] "the evidence was likely lost, thus allowing [her] rapist/drugger to go free." (Notice of Claim at 2).

***3** When she was taken back to the ACCF from the hospital, plaintiff states that she was held in a "medical ward," with no working drinking water, a heart rate of 120, and vomiting blood. (Notice of Claim at 3). Plaintiff has included great detail in her Notice of Claim about the poor treatment [5] and lack of medical assistance that she suffered for the next two days [6] while she was incarcerated at the ACCF. (Notice of Claim at 3). Plaintiff states that on October 16, 2018, she was left alone with a large plastic garbage bag, which she hid under her mattress and "determined that if [she] was not bailed out or at least on the tier by Friday, [she] would suffocate [herself]...." However, she has not associated the allegedly improper conduct with any named defendant, and in her Notice of Claim, she has only named individual corrections officers who ultimately helped plaintiff obtain care.

Plaintiff next states that "a lieutenant" failed to report her drugging and sexual assault, and that Investigator Andrus "refuses to investigate." (Compl. ¶ 5, Second Cause of Action). In her Notice of Claim, plaintiff states that on November 5, 2018, she spoke to "the Sgt." at the Albany County Sheriff's Office who told plaintiff that defendant Andrus "did not do any investigating" because the Police Department never received any of plaintiff's alleged 911 calls from the night of her arrest. (Notice of Claim at 3). Neither Investigator Andrus nor Matthew Wilson, [7] the Saratoga Springs investigator contacted plaintiff. Plaintiff claims that Investigator Wilson was told that defendant Andrus would continue investigating, and the two would later meet to "brief each other." (*Id.*)

Plaintiff claims that evidence was lost because of defendant Andrus's conduct, and plaintiff was never able to obtain the "Pearl Street Pub footage." (*Id.*) Plaintiff claims that

Pearl Street Pub might have been the location where she was sexually assaulted. (*Id.*) Plaintiff then alleges that the lack of investigation forced her to get "answers [herself]" at the Pearl Street Pub, resulting in her wrongful arrest and attorneys fees.[8] (Notice of Claim at 4). Plaintiff alleges that the week of November 10, 2018, a Sheriff's investigator tried to retrieve video footage "despite [her] demands not to investigate, and for them to transfer her case to the New York State Police." (Notice of Claim at 4). Plaintiff claims that this was done to "cover-up wrongdoing." (*Id.*)

Plaintiff states that on November 16, 2018, the Albany County Sheriff failed to "arrive to my emergency phone calls, resulting in severe emotional distress, property damage, physical damage, and false arrest by APD, who they knew were conspiring against [her] and likely willing participants in the conspiracy...." (*Id.*) Plaintiff claims that on December 10, 2018, District Attorney David Soares "unlawfully kept FOILable information from [plaintiff] in an effort to destroy evidence that [she has]" which would prove that her discrimination complaints were left unanswered "and to continue to maliciously prosecute in an effort to discredit me, unnecessarily and untruthfully."[9] (*Id.*)

***4** In her Notice of Claim, plaintiff states that "Sergeant Noonan"[10] failed to investigate and "classify" her complaints properly. Plaintiff states that defendant Sheriff Apple, Undersheriff Monteleone,[11] Sergeant "Noon,"[12] defendant Andrus, "and multiple other agents of the Albany County Sheriff's Department" refuse to contact her to hear her complaints, and they "have unlawfully blocked [her] on the Sheriff's public official Facebook page in violation of [her] First Amendment rights."[13] She also claims that they have blocked her from emailing them and from emailing her Crime Victims' Advocate, also in violation of the First Amendment and in violation of her right to "Victims' Services in New York State." (Notice of Claim at 4).

Plaintiff states that the Sheriff's Office continues to refuse to investigate her sexual assault or to turn the investigation over the New York State Police. (*Id.*) Plaintiff also states that she has been "dismiss[ed]" from serving on the Community Accountability Board "in a discriminatory and illegal manner." (*Id.*) Plaintiff claims that the County "continues" to inappropriately and maliciously prosecute her for charges to which "they know [she has] an affirmative defense," and the County continues to maliciously prosecute her "despite our prior personal and professional relationships," and the County continues to "discriminate in the Rape Aggression Defense Program as well as the Community Accountability Board." (*Id.*)

The following allegations are only contained in the plaintiff's Notice of Claim and do not appear to be included in the federal action, but the court will summarize what plaintiff has stated. Plaintiff claims that the County District Attorney has neglected to respond to plaintiff's messages regarding misconduct in the Police Department since September of 2018. (*Id.*) Plaintiff claims that the District Attorney has "repeatedly violated [her] rights to not obtain evidence under false pretenses and [her] rights to not obtain evidence through a personal complaint." (*Id.*)

Plaintiff claims that on December 13, 2018, she was made to feel uncomfortable during a Family Court hearing when a deputy "thanked" the corporation counsel for "taking on this case." (Notice of Claim at 5). Plaintiff concludes her Notice of Claim by stating that the violation of plaintiff's rights and resulting damages were caused by "negligence and/or a custom, policy, regulation, and/or the deliberate indifference of the County of Albany, the [ACCF], the Albany County District Attorney's office and the Albany County Sheriff's Department." (*Id.*)

## DISCUSSION

### I. Right to Investigation

#### A. Legal Standards

Plaintiff has no constitutional right to an investigation of any sort by government officials. *See Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008); *Lewis v. Gallivan*, 315 F.Supp.2d 313, 317 (W.D.N.Y. 2004) (citing cases). The Due Process clause generally confers no affirmative right to governmental aid, and "there is no constitutional violation where the government refuses to investigate a crime...." *Bernstein*, 591 F.Supp.2d at 460 & n.106 (citing *Longi v. County of Suffolk*, No. CV-02-5821, 2008 WL 858997, at *6 (E.D.N.Y. Mar. 27, 2008) ).

#### B. Application

Plaintiff alleges that from October 17, 2018 to the present, defendant Corey Andrus has refused to investigate her claim that she was sexually assaulted and drugged prior to being arrested. Because plaintiff has no constitutional right to an investigation, this claim against defendant Andrus fails. *See*

*Ehlers v. C.I.A.*, No. 6:15-CV-387, 2015 WL 3637431, at *3 (N.D.N.Y. June 10, 2015), *adopting Rep't Rec.* (N.D.N.Y. Apr. 16, 2015) (dismissing with prejudice on initial review claim that officials failed to investigate a crime).

## II. Blocking Plaintiff on Facebook (First Amendment)

### A. Legal Standards

***5** To state a claim under section 1983 in general, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F.Supp.2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983. A plaintiff may recover under section 1983 by asserting a violation of her First Amendment rights. *Dingwell v. Cossette*, 327 F.Supp.3d 462, 469 (D. Conn. 2018). Such claims are generally in the nature of retaliation claims because the government's conduct was "in retaliation" for the expression protected by the First Amendment. *See id.*

In order to state a First Amendment claim, plaintiff must allege that she had a right protected by the First Amendment, the defendant's actions were motivated or substantially caused by the exercise of that right, and the defendant's retaliatory actions caused the plaintiff some injury. *Id.* (citing *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) ). These injuries may include an adverse affect on plaintiff's speech resulting from the government's retaliation, loss of business, or other "tangible" injury. *Id.* Hurt feelings or bruised egos are not by themselves sufficient injuries. *Id.* (citing *Zherka v. Amicone*, 634 F.3d 642, 645-46 (2d Cir. 2011) ). In *Vaher v. Town of Orangetown,* 916 F.Supp.2d 404, 431-32 (S.D.N.Y. 2013), the court listed injuries resulting from the defendants' retaliatory conduct, including harm to professional reputation, temporary modification of plaintiff's job responsibilities, further harassment and intimidation by defendants, and economic loss. The plaintiff may also show that her speech was "actually chilled," and that the defendants' actions caused a change in behavior. *Id.* (citations omitted).

In *Dingwell*, plaintiff claimed that he was blocked from posting on the Police Department's Facebook page, based on his public criticism of the department contained in his postings. *Id.* at 470. In finding that plaintiff stated a claim, the court in *Dingwell* cited *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F.Supp.3d 541, 549 (S.D.N.Y. 2018) in which the court held that blocking the individual plaintiffs from the @realDonaldTrump Twitter account because of their expressed political views violated the First Amendment.

### B. Application

In plaintiff's form-complaint, she simply states that defendant Apple blocked her on Facebook. (Compl. ¶ 4). In her Notice of Claim, plaintiff states that defendant Apple, together with other individuals, including defendant Andrus and "multiple other agents of the Albany County Sheriff's office refuse to contact me to hear my complaints, have unlawfully blocked me on the Sheriff's public official Facebook page in violation of my First Amendment rights, have unlawfully blocked me from emailing them all and more persons...." (Notice of Claim at 4).

Plaintiff does not explain why she was blocked from Facebook, and she does not allege that she was blocked from Facebook or from emailing officials in retaliation for her views or her criticism of the office. From her complaint form, it appears that she alleges that only the Sheriff was responsible for this conduct, but her Notice of Claim contains several allegations against several individuals, some of whom are not named defendants. Thus, the court cannot determine what conduct was committed by which defendant or defendants. Conclusory allegations are insufficient to state a section 1983 claim. *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Thus, the court will recommend dismissing without prejudice to plaintiff filing an amended complaint to clarify her claims.

## III. "Volunteer" Work

### A. Legal Standards

***6** In order to state a constitutional procedural due process claim for loss of work, plaintiff would first have to show that she had a property interest in her volunteer position. *Simpson v. O'Sullivan*, No. 09-CV-2334, 2010 WL 4608741, at *2 (E.D.N.Y. Nov. 2, 2010). If that showing is made, the court must determine whether that property interest is protected by the Fourteenth Amendment. *Id.* If so, then plaintiff must also allege that the defendant or defendants deprived her of that interest without due process. *Id.*

Plaintiff could also state a substantive due process claim for loss of her volunteer position if she could assert a "stigma plus" claim. *Id.* In order to assert such a claim, plaintiff must allege that the defendant uttered a false statement, [14] which was injurious to plaintiff's reputation, together with " 'some tangible and material state imposed burden in addition to the

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

stigmatizing statement.' " *Id.* (quoting *Monserrate v. New York State Senate*, 599 F.3d 148, 158 (2d Cir. 2010) ).

**B. Application**

In plaintiff's complaint form, she states that on October 4, 2018, she was subjected to discrimination, slander, and libel due to PTSD. Then she states that she was terminated from her "pro bono" work with the Sheriff's Department and County. (Compl. at ¶ 4). She then references her Notice of Claim, in which she states that she was "the subject of unlawful discrimination by being turned away from a volunteer activity with the Albany County Sheriff's and District Attorney's Rape Aggression Defense team." (Notice of Claim at 2).

It is unclear whether plaintiff is trying to allege that she was turned away from her volunteer position because she had PTSD or whether she was subjected to "discrimination, libel, and slander" due to PTSD, and the termination of employment was for some other reason. She also fails to allege which defendant or defendants were responsible for this action. She does not appear to be making a statutory Americans with Disabilities Act [15] claim, and her conclusory allegations do not state a procedural or a substantive due process claim.

With respect to her procedural due process claim, plaintiff has not alleged any property right in maintaining volunteer or "pro bono" employment with the Sheriff's department or the County. She has failed to cite any statutory basis, state law or otherwise, that would afford her such a property interest. Without an alleged property interest, any procedural due process claim may be dismissed. *See Simpson, supra.*

With respect to a substantive due process claim, it is unclear why plaintiff was terminated from her position. She alleges "discrimination, libel, and slander," but does not indicate how this conduct was relevant to her dismissal from her volunteer position. In any event, any substantive due process claim fails because even if she had alleged a "stigma," she has not stated a tangible injury because she lacked a property interest in her volunteer position. *Id.* (plaintiff failed to state a substantive due process claim because he had no legal right to his volunteer position). Plaintiff's conclusory statements fall short of stating a claim. However, the court will recommend dismissing plaintiff's claim without prejudice to her amending her complaint to clarify her allegations.

**IV. False Arrest/Denial of Telephone Calls**

**A. Legal Standards**

***7** In order to prevail on a false arrest claim, plaintiff must plausibly allege that the defendant intended to confine her, plaintiff was conscious of the confinement, the plaintiff did not consent to the confinement, and the confinement was not "otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted). An arrest by a police officer is privileged if it is based on probable cause. *Id.* at 135. However, " '[t]he defendant has the burden of raising and proving the affirmative defense of probable cause.' " *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (citations omitted).

False arrest is a type of false imprisonment, and the elements are substantially the same. *Wyant v. Okst*, 101 F.3d 845 (2d Cir. 1996). In order to state a claim for false imprisonment, under New York law, the plaintiff must allege that the defendant intended to confine plaintiff, the plaintiff was conscious of the confinement, the plaintiff did not consent to the confinement, and the confinement was not otherwise privileged. *Id. See also Campbell v. City of New York*, No. 16-CV-7201, 2019 WL 569768, at *5 (E.D.N.Y. Feb. 11, 2019) (discussing standards for false arrest and false imprisonment under the Fourth Amendment, based upon an analysis of the law of the state in which the arrest occurred).

**B. Application**

It is unclear whether plaintiff is actually claiming that she was falsely arrested. She does not mention false arrest in the form complaint, but she does state in her notice of claim that "during [her] time wrongfully remanded as a victim to [ACCF]," she was denied "bail" calls or calls to her employer. To the extent that plaintiff is attempting to allege false arrest, she does not state any particular facts that would establish such a claim, nor does she sue any particular individual who might have been responsible for the conduct. Her conclusory statements do not suffice.

Plaintiff alleges that she was denied "bail" calls, and in both her form complaint and the Notice of Claim, she asserts that "multiple" corrections officers lied to her family about the amount of bail, thus, causing plaintiff to be incarcerated "longer than necessary." (Notice of Claim at 2). Plaintiff may somehow be attempting to allege some form of false imprisonment. Although plaintiff alleges that the denial of telephone calls falls under the Eighth Amendment, the court notes that to the extent that she is claiming that her incarceration lasted longer than necessary or that her liberty

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

was somehow prevented by some defendant's actions, any such claim would be brought under the Fourth and Fourteenth Amendment. In addition, as discussed below, allegations of mistreatment of pretrial detainees in state custody are brought under the Due Process Clause of the Fourteenth Amendment. *See* *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted).

Regardless of the alleged constitutional protection, plaintiff does not indicate who arrested her, nor has she alleged that there was no probable cause for her arrest. To the extent that plaintiff claims that the denial of telephone calls was responsible for her extended incarceration, she has not alleged who was responsible for the denial of these telephone calls. [16] Plaintiff is advised that personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Thus, the court will recommend dismissal without prejudice of any false arrest or false imprisonment claims, in addition to any claims that some corrections officer denied plaintiff the opportunity to call someone to post bail or lied to her family about the bail amount so that she would remain incarcerated.

## V. Conditions of Confinement/Excessive Force/Medical Care

### A. Legal Standards

***8** As stated above, claims regarding the confinement of pretrial detainees are brought under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Darnell v. Pineiro, supra*. The due process clause is applicable because pretrial detainees have not yet been convicted of a crime and thus, may not be punished in any manner, cruel or otherwise. *Id.* (citations omitted). A pretrial detainee may establish a section 1983 claim for allegedly unconstitutional conditions of confinement by showing that the defendant officers acted with deliberate indifference to the challenged conditions. *Id.* In *Darnell*, the Second Circuit clarified the standard for deliberate indifference as it applies to pretrial detainees. *Id.* at 29-37.

To establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause, the plaintiff must

> prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew or should have known, that the condition posed an excessive risk to health or safety.

*Id.* at 35. The Second Circuit concluded that deliberate indifference for due process purposes must be defined "objectively." *Id.* However, any claim for a due process violation requires more than mere negligence. *Id.* (citing *Kingsley v. Hendrickson*, ––– U.S. ––––, 135 S.Ct. 2466, 2472, 192 L.Ed.2d 416 (2015) ).

A claim for inadequate medical care for a pretrial detainee requires a showing of "deliberate indifference to ... serious medical needs," which requires proof of two elements: "medical need" and "deliberate indifference." *See* *Valdiviezo v. Boyer*, 17-1093, 2018 WL 5096345, at *2 (2d Cir. Oct. 18, 2018) (citing *Darnell v. Pineiro*, 849 F.3d at 29). The plaintiff must show that she actually did not receive adequate care and that the inadequacy in the medical care was sufficiently serious. *Id.* (citing *Valdiviezo v. Boyer, supra* ).

Pretrial detainees who bring claims of excessive force must allege that the force used purposely or knowingly against them was "objectively unreasonable." *Szabo v. Parascandolo*, No. 16-CV-3683, 2019 WL 481925, at *5 (E.D.N.Y. Feb. 7, 2019) (citing *Kingsley v. Hendrickson*, 135 S.Ct. at 2473).

### B. Application

Although plaintiff claims that she was the victim of excessive force, she does not explain who subjected her to the excessive force or what force was administered. [17] Thus, although alleging excessive force may state a claim under section 1983, plaintiff's claim fails at this time because she has not alleged any facts in support of her claim. Plaintiff also alleges that she was denied proper medical care while she was incarcerated at ACCF. At least for her medical care claim, plaintiff has included details of the alleged conduct of jail officials in her Notice of Claim. While such allegations could rise to the

level of constitutional violations, she has failed to allege any individual who was responsible for denying her proper care.

Plaintiff also seems to challenge the conditions of her confinement. She states that she was placed in a single medical cell, forced to take laxatives, and was provided no drinking water. (Compl. ¶ 4, Third Cause of Action). In her Notice of Claim, she elaborates on this claim. (Notice of Claim at 3). In her Notice of Claim she states that she was held in the medical ward without adequate treatment, was forced to take suppositories, became dehydrated because of the lack of drinking water, was "abused both physically and verbally by medical staff," and was forced to sit for hours in soiled pants. Plaintiff claims that she was so distraught over these actions that she contemplated suicide. (*Id.*) However, she does not name or describe any individual officer or member of the medical staff who were allegedly responsible for these conditions or this conduct.

***9** In her Causes of Action, plaintiff states that "Negligence: A lieutenant failed to report [her] drugging and sexual assault leaving [her] in medical pain for hours and losing evidence." (Compl. Second Cause of Action). To the extent that plaintiff claims negligence by any defendant, negligence is not actionable under section 1983. *Darnell v. Pineiro*, 849 F.3d at 35. Thus, the court will recommend dismissing plaintiff's claims of excessive force, denial of medical care, and conditions of confinement without prejudice and with leave to amend to clarify her claims and include the individuals who were involved in the alleged conduct.

The court notes that plaintiff also alleges various instance of verbal abuse by the officers and "medical staff." It is well established that verbal abuse and profanity is not actionable conduct under 42 U.S.C. § 1983, because such abuse does not violate any protected federal right. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Crown v. Croce*, 967 F.Supp. 101, 104 (S.D.N.Y. 1997); *Beal v. City of New York*, No. 92 Civ. 0718, 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994) ("mere verbal abuse, and even vile language, does not give rise to a cognizable claim under Section 1983"), *aff'd*, 89 F.3d 826 (2d Cir. 1995). So, plaintiff's claims of verbal abuse may be dismissed with prejudice.

## VI. Municipal Liability

### A. Legal Standards

It is well-settled that in order to establish liability of a municipality pursuant to 42 U.S.C. § 1983 for violation of civil or constitutional rights, a plaintiff must allege that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli*, 980 F.Supp. 635, 639 (N.D.N.Y. 1997) (citing *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 689, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ) (other citations omitted). Generally speaking, a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, will not suffice to raise an inference of the existence of a custom or policy. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, the Supreme Court has stated that municipal liability under section 1983 may be established even with a single act of a municipal policymaker whose acts represent official policy. *See Stalter v. County of Orange*, 345 F.Supp.3d 378, 392 & n.4 (S.D.N.Y. Nov. 5, 2018) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ).

### B. Application

In this case, plaintiff names Albany County as a defendant, but she has failed to allege any policy or custom of the County that was allegedly responsible for her injuries. The only allegations that could potentially be sufficient to involve the County would be if plaintiff claimed that the Sheriff himself "blocked" plaintiff on Facebook or if the Sheriff had been personally involved in terminating plaintiff from her volunteer position, depending on whether plaintiff could ultimately state a constitutional claim based on this alleged conduct. Thus, any claims against Albany County may be dismissed without prejudice to plaintiff filing an amended complaint.

## VII. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

***10** Although this court is recommending dismissal of the entire complaint, any dismissal should be without prejudice to plaintiff submitting an amended complaint with respect to all her claims, except the failure to investigate and any negligence claims. In amending her complaint, she should clarify the facts and the claims that she is including in her federal action, not simply by referring to her general Notice of Claim. She should attempt to name, identify the positions of, or describe any individuals who were allegedly responsible for the denial of medical care and the conditions of her confinement. If plaintiff claims that she was the victim of excessive force, she should include the facts upon which she bases such an allegation, and she must name or describe the individual who was responsible for the unconstitutional conduct and when the incident occurred. Any amended complaint must be a ***complete pleading*** which will supercede the original. Plaintiff may ***not*** incorporate by reference any of the original complaint into her amended complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING**, and it is

**RECOMMENDED**, that any claims of **failure to investigate** by defendant **COREY ANDRUS**, and any **negligence claims against any defendants** be dismissed **WITH PREJUDICE**, and the complaint be dismissed in its entirety as to defendant **Andrus**, and it is

**RECOMMENDED**, that all other claims in the complaint be **DISMISSED WITHOUT PREJUDICE TO PLAINTIFF SUBMITTING AN AMENDED COMPLAINT FOR THE COURT'S REVIEW**, and it is

**RECOMMENDED**, that if the District Court adopts this Recommendation, plaintiff be afforded **THIRTY (30) DAYS** from the date of the District Court's order within which to file an amended complaint in accordance with the Report-Recommendation above or ask for an extension of time to do so, and it is

**RECOMMENDED**, that when plaintiff files a proposed amended complaint, the matter be returned to me for further review, and it is

**RECOMMENDED**, that if plaintiff fails to file a proposed amended complaint or ask for an extension of time to do so within thirty (30) days of an order adopting this Recommendation, the complaint be dismissed in its entirety with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 911192

## Footnotes

1 The court notes that Albany County has a County Attorney, while the City has a Corporation Counsel. Because plaintiff is attempting to name Albany County entities/individuals, the court assumes that plaintiff meant to write “Albany County Attorney” in her Notice of Claim. The court also notes that David Soares is the District Attorney of Albany County.

2 Plaintiff has numbered the pages of her Notice of Claim, thus, the court will cite to the pages as they have been numbered at the bottom of the page by plaintiff.

3 Plaintiff lists this program as the Albany County Sheriff's and Albany County District Attorney's Office Rape Aggression Defense Team. (Notice of Claim at 1).

4 Plaintiff also states that while she was at the hospital, the "officers" attempted to have plaintiff handcuffed to the bed, which resulted in excessive bruising and "musculoskeletal pain" for several weeks. (Notice of claim at 3).

5 Plaintiff claims that she was falsely "labeled" a drug addict, forced to "take" suppositories, and denied a urinary tract infection test. (Notice of Claim at 3).

6 Plaintiff states that these dates are Monday, October 15 to Wednesday, October 17, 2018.

7 Investigator Wilson is not a named defendant.

8 Plaintiff does not specify when this allegedly "wrongful" arrest took place, and it is not part of this federal action.

9 Malicious prosecution is not a claim in this federal action. There are no details supporting this conclusory statement. In any event, plaintiff would not be able to sue the District Attorney for his decision to prosecute plaintiff because he would be entitled to absolute immunity in that instance. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

10 Sergeant Noonan is not a named defendant in this action. In any event, as discussed fully below, any failure to investigate would not be actionable under section 1983.

11 Undersheriff Monteleone is not a named defendant in this action.

12 Plaintiff may be referring to Sergeant "Noonan."

13 In her form-complaint, plaintiff alleges that the Sheriff himself "blocked" her from the Sheriff's public Facebook page from October 14, 2018 "to present." (Compl. ¶ 4).

14 This could be related to her attempted "defamation and slander" claims.

15 42 U.S.C. § 12101 et seq.

16 At this time, the court is in no way finding that the denial of such calls rose to the level of a constitutional violation.

17 To the extent that plaintiff is alleging that she was drugged and assaulted before her arrest and incarceration, she would not be able to bring such a claim in this action because they would not relate to the named defendants. It is unclear from the complaint who plaintiff claims assaulted her.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1516933
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brittany KILCHER, Plaintiff,
v.
CRAIG APPLE/ALBANY COUNTY SHERIFFS DEPARTMENT et al., Defendants.

1:19-cv-00158 (BKS/ATB)
|
Signed 04/08/2019

**Attorneys and Law Firms**

Brittany Kilcher, Castleton-on-Hudson, NY 12033, Plaintiff, pro se.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge

***1** Plaintiff pro se Brittany Kilcher commenced this action on February 7, 2019, asserting claims under 42 U.S.C. § 1983. (Dkt. No. 1). This matter was assigned to United States Magistrate Judge Andrew T. Baxter, who issued a Report-Recommendation on February 25, 2019 recommending: (1) that any claims for Defendant Corey Andrus's failure to investigate and any negligence claims against any Defendants be dismissed with prejudice; (2) that the Complaint be dismissed in its entirety as to Defendant Andrus; and (3) that all other claims in the Complaint be dismissed without prejudice and with leave to file an amended complaint. (Dkt. No. 4). Magistrate Judge Baxter advised Plaintiff that under 28 U.S.C. § 636(b)(1) she had 14 days within which to file written objections to the report, and that the failure to object to the report within 14 days would preclude appellate review. (Dkt. No. 4, at 25). No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 4) is **ADOPTED** in its entirety; and it is further

**ORDERED** that any claims for Defendant Corey Andrus's failure to investigate and any negligence claims against any Defendants are **DISMISSED with prejudice**, and it is further

**ORDERED** that the Complaint be dismissed in its entirety as to Defendant Andrus; and it is further

**ORDERED** that that all other claims in the Complaint are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff may file an amended complaint **within THIRTY (30) days** from the date of this Order; and it is further

**ORDERED** that, if Plaintiff files a proposed amended complaint, the matter be returned to Magistrate Judge Baxter for further review; and it is further

**ORDERED** that, if Plaintiff fails to file an amended complaint or ask for an extension of time to do so within thirty (30) days of the date of this Order, the Complaint shall be dismissed in its entirety with prejudice, without further order of the Court; and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Order upon Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1516933

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 2465086
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Salina MAYES, Plaintiff,
v.
UNITED STATES POSTAL SERVICE, Defendant.

19-CV-355 (JLS)
|
Signed 05/13/2020

**Attorneys and Law Firms**

Boyd L. Earl, LoTempio P.C. Law Group, Buffalo, NY, for Plaintiff.

Mary Pat Fleming, Mary K. Roach, U.S. Attorney's Office, Buffalo, NY, for Defendant.

**DECISION AND ORDER**

JOHN L. SINATRA, JR., UNITED STATES DISTRICT JUDGE

***1** On March 15, 2019, Plaintiff Salina Mayes commenced this action under the Federal Tort Claims Act ("FTCA"), asserting a negligence claim against the United States Postal Service ("USPS"). Presently before the Court are Defendant's motion to set aside the default and to dismiss Plaintiff's complaint for insufficient service of process (Dkt. 8), Plaintiff's cross motion to determine that service was proper (Dkt. 14), and Defendant's motion to substitute party (Dkt. 18).

For the reasons that follow, the Court grants Defendant's motion to set aside the default, grants Plaintiff's request for a determination that service was proper, denies Defendant's motion to dismiss for insufficient service of process, and grants Defendant's motion to substitute the United States as defendant.

**BACKGROUND**

The following facts are taken from the complaint (Dkt. 1). As is required at this stage of the proceedings, the Court has treated Plaintiff's allegations as true.

Mayes alleges that, on April 9, 2016, she was injured when a USPS employee driving a postal truck rear-ended her. Dkt. 1, ¶¶ 9-10. On April 6, 2018, approximately two years after the accident, she filed an administrative claim against the USPS. *Id.*, at ¶ 5; Dkt. 1, Exh. A. On January 18, 2019, Mayes received a letter denying the administrative claim. Dkt. 1, Exh. B.

On March 15, 2019, Mayes filed this lawsuit against USPS. Dkt. 1. On April 1, 2019, she filed an affidavit of service, which stated that the summons and complaint was served on United States Postal Service at 1200 William Street in Buffalo, New York. Dkt. 5. On November 18, 2019, Mayes requested a clerk's entry of default, Dkt. 6, which was entered on the next day on November 19, 2019, Dkt. 7. Mayes did not issue a summons to either the U.S. Attorney or the Attorney General of the United States.

On December 12, 2019, USPS filed a motion to set aside the default and to dismiss Mayes's complaint for insufficient service of process. Dkt. 8. The grounds for dismissal were based on the failure to serve the Attorney General and the United States Attorney's Office, as required by the Federal Rules of Civil Procedure when the United States is the defendant. *Id.*, Decl. ¶¶ 8-12. On January 3, 2020, Mayes filed a response opposing the motion to dismiss and requesting a determination that service was proper. Dkt. 14. In this cross motion, Mayes included several affidavits of service reflecting that she had completed service upon the United States on December 31, 2019: by personally serving the United States Attorney for the Western District of New York, and by sending a copies of the summons and complaint via certified mail to the Attorney General in Washington D.C., as well as the Postmaster General and United States Attorney's offices in Washington, D.C. Dkt. 14, Exhs. E-F. On January 10, 2020, USPS replied, arguing that Mayes does not dispute service was improper and that Mayes is not entitled to relief under Fed. R. Civ. P. 4(i)(4). Dkt. 16.

By text order on April 13, 2020, this Court directed the parties to file supplemental briefing on whether *Klein v. Dep't of Veteran Aff.*, 1:18-CV-00360 EAW, 2019 WL 1284270 (W.D.N.Y. Mar. 20, 2019), applies in absence of motion to substitute the United States as defendant. Dkt. 17. On April 22, 2020, USPS filed a response as well as a motion to substitute. Dkts. 18, 19, 20. On May 1, 2020, Mayes filed a response, Dkt. 21, and on May 5, 2020, USPS filed an additional response, Dkt. 22.

## DISCUSSION

### I. MOTION TO SET ASIDE ENTRY OF DEFAULT

***2** USPS argues that Mayes's claim is not for a sum certain, that Mayes has failed to establish a claim or right to relief against the United States, and that there is good cause to set aside the entry of default because Mayes has failed to serve her complaint properly. Dkt. 9. Mayes concedes that the Complaint was not served properly initially and, thus, agrees that the clerk's entry of default may be set aside. Dkt. 14, Mem. at 2. Given Mayes's agreement, it is not necessary to address USPS's arguments. The motion to set aside entry of default, Dkt. 8, is granted.

### II. MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS

#### A. Legal Standard

Rule 12(b)(5) provides for dismissal of a claim based on insufficient service of process. Fed. R. Civ. P. 12(b)(5). In assessing a Rule 12(b)(5) motion to dismiss, a court must look "to matters outside the complaint to determine whether it has jurisdiction," *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016), as well as Rule 4, which governs the content, issuance, and service of a summons. *See, e.g.*, *Harmon v. Bogart*, No. 17-CV-1070S, 2019 WL 483836, at *2 (W.D.N.Y. Feb. 7, 2019). The plaintiff bears the burden of proving service was adequate. *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting *Preston v. New York*, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002)).

#### B. Motion to Dismiss

USPS moves to dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). Dkt. 8. And Mayes requests an order determining that service was proper. Dkt. 14.

Rule 4(m) provides the general time limit for service: a plaintiff has 90 days from the date the complaint is filed to serve the defendant with the summons and complaint. Fed. R. Civ. P. 4(m).

Rule 4(i)(1) provides that, to serve the United States properly, a party must:

> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
>
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i)(1).

Rule 4(i) also contains a cure provision giving parties who are required to serve process on the United States but failed to do so "a reasonable time" to cure such a failure. *See Kurzberg v. Ashcroft*, 619 F.3d 176, 184 (2d Cir. 2010). This provision requires the court to "allow a party a reasonable time to cure its failure to: (A) serve a person required to be served under Rule 4(i)(2), if the party has served either the United States Attorney or the Attorney General of the United States; or (B) serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee." Fed. R. Civ. P. 4(i)(4)(A)-(B).

It is well-established that "suits against the United States Postal Service are suits against the United States." *See, e.g.*, *Lombardi v. United States*, No. 15-CV-1047-A, 2016 WL 1604492, at *1 (W.D.N.Y. Apr. 22, 2016) (citing *Dolan v. United States Postal Serv.*, 546 U.S. 481, 484-485 (2006)). The Postal Reorganization Act provides that the FTCA shall apply to tort claims arising out of activities of the Postal Service. *See* 39 U.S.C. § 409(c); *Dolan*, 546 U.S. at 484. The FTCA "waives the sovereign immunity of the United States for certain torts committed by federal employees, including Postal Service employees, within the scope of their employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 80 (2d Cir. 2008). Under the FTCA, district courts have "exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b)(1).

***3** USPS argues that because the FTCA precludes tort suits against federal agencies, the **United States** is the only proper defendant in this action and **Mayes** was required, and failed, to serve the **United States** in the manner Rule 4 requires. Dkt. 9, at 5-6. USPS further argues that the Rule 4(i)(4) cure provision does not apply. Dkt. 16, at 2-3. **Mayes** does not dispute that she failed to comply with the requirements of Rule 4(i) initially but argues that she cured the defective service within a reasonable time of learning of the error upon USPS's motion to dismiss. Dkt. 14, Mem. at 3.

**Mayes** indeed failed to comply with Rule 4(m)'s 90-day service deadline: she commenced this lawsuit on March 15, 2019 but failed to deliver a copy of the summons and complaint on the **United States** Attorney's Office in this district or send a copy of each to the Attorney General in Washington, D.C., until December 31, 2019. *Id.*; Dkt. 14, Exhs. E-F. This was well after the 90-day deadline. **Mayes's** attorney avers that he was unaware service was not properly effectuated until he received USPS's motion to dismiss in December 2019, and that **Mayes** timely served the summons and complaint upon the motion's receipt. Dkt. 14, Decl. ¶¶4, 7, 9-11.

**Mayes** cites several cases to argue that she cured the failure to serve within the reasonable time allowed under Rule 4(i)(4). Dkt. 14, Mem. at 3-5. However, neither provision of Rule 4(i)(4) applies to **Mayes's** case. Curing under Rule 4(i)(4)(A) is triggered only when a party has served either the **United States** Attorney or the Attorney General of the **United States** within the 90-day period, which **Mayes** did not do. Rule 4(i)(4)(B) applies when a plaintiff has failed to serve under Rule 4(i)(3), which is inapplicable because here **Mayes** did not sue an officer or employee individually. Thus, the cases **Mayes** cited do not apply. *See Carthron-Kelly v. Comm'r of Social Security*, No. 5:15-CV-0242, 2017 **WL** 481436, at *2-3 (N.D.N.Y. Feb. 6, 2017) (allowing the plaintiff to cure failure under Rule 4(1)(4)(A) to serve process on the **United States** where the plaintiff timely served the **United States** Attorney, but not the Attorney General); *Boucher v. Potter*, No. 1:04-CV-1541, 2005 **WL** 1183148, at *4 (S.D. Ind. May 18, 2005) (denying motion to dismiss in a suit against the Postmaster General because the plaintiff had timely served the **United States** Attorney and could cure service to Attorney General within a reasonable time under Rule 4(i)).

While **Mayes** has not complied with the 90-day deadline of Rule 4(m) and is not entitled to relief under Rule 4(i)(4), this Court has discretion to grant extensions under Rule 4(m). If a plaintiff fails to effect service within the 90 days under Rule 4(m), the court "must dismiss the action without prejudice against that defendant or order service be made within a specific time." Fed. R. Civ. P. 4(m). But "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* Additionally, even in the absence of good cause, this Court may, in its discretion, grant an extension of time to effect proper service. *See* Fed R. Civ. P. 4(m) advisory committee's note to 1993 amendment (Rule 4(m) "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown."); *Zapata v. City of N.Y.*, 502 F.3d 192, 196 (2d Cir. 2007) ("We hold that district courts have discretion to grant extensions [to serve] even in the absence of good cause.").

When determining whether to grant a discretionary extension, Second Circuit courts generally consider four factors: "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *Klein*, 2019 **WL** 1284270, at *2 (citing *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010)).

***4** This Court does not reach the issue of whether **Mayes** demonstrates good cause for the failure to effectuate service because it finds, even in the absence of good cause, it will use its discretion to extend the time allowed to **Mayes** in light of the relevant factors cited above. *See id.* at *3 (finding a good cause analysis unnecessary when the court finds a discretionary extension is appropriate even without good cause).

The first factor weighs in favor of **Mayes** because the statute of limitations would likely bar **Mayes's** action if refiled. USPS's letter denying **Mayes's** administrative claim was mailed on January 18, 2019, *see* Dkt. 1, Exh. B, and she filed this case on March 15, 2019, *see* Dkt. 1. 28 U.S.C. § 2401(b) provides that a tort claim against the **United States** will be "forever barred unless ... action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Plaintiff only had until July 18, 2019, six months after the date of mailing of USPS's administrative determination of denial, to


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

file a timely claim against the United States. Dkt. 1, Exh. B. Dismissal of Mayes's claims at this point would result in the barring of remedies, a factor weighing heavily in Mayes's favor. *See* Dkt. 1, Exh. B. (stating the six-month deadline for filing suit regarding the denial); *see also Millet v. Selip & Stylianou LLP*, No. 15-CV-773, 2020 WL 979787, at *3 (W.D.N.Y. Feb. 28, 2020) (stating that where the limitations period had expired, the plaintiff "unquestionably would be prejudiced by dismissal"); *Klein*, 2019 WL 1284270, at *3 (concluding the statute of limitations factor weighs in favor of granting discretionary extension). Relief "may be justified ... if the applicable statute of limitations would bar the refiled action." Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment.

Also weighing in Plaintiff's favor is the Second Circuit's stated preference for resolving disputes on the merits. *See Millet*, 2020 WL 979787, at *3 (citations omitted). Furthermore, this is not a case where Mayes has another opportunity to litigate her claim. *See Harmon*, 2019 WL 483836, at *4 (concluding the first factor regarding statute of limitations weighs against a discretionary extension where the plaintiff had a parallel, active action in state court against the same defendants for the same incident).

As for the second factor, Defendant concedes that USPS had "some notice" of Mayes's claim due to the administrative claim and correspondence to USPS. Dkt. 22, at 2. But it is undisputed, as Defendant notes, that Mayes failed to timely serve Defendant with process in this case.

As for the third factor, there is nothing to suggest USPS concealed or attempted to conceal the untimely service or defect. *See Millet*, 2020 WL 979787, at *3-4 (noting that the defendant's months-long participation in the lawsuit and delay in filing its motion to dismiss gives rise to an inference of bad faith and effective attempt to conceal the defect in service).

As for the final factor, the Court acknowledges that "any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action," particularly if the defendant has no actual notice of the complaint's existence until after the service period has expired. *See Zapata*, 502 F.3d at 198. Indeed, courts must keep in mind that, "in the absence of good cause, no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." *Id.*

***5** Ordinarily, discretion is exercised when the plaintiff has advanced some colorable excuse for neglect. *Id.*; *see also Klein*, 2019 WL 1284270, at *4 (noting that while the plaintiff's excuse did not rise to the level of good cause, *Zapata* did not establish a per se rule that district courts must require a colorable excuse from plaintiff before exercising Rule 4(m) discretion). Here, Mayes neglected to follow the applicable rule of procedure for serving the United States, even though her administrative denial letter stated the proper defendant in this case was the United States. Dkt. 14, Exh, B. But she has agreed to setting aside the entry of default, lessening the prejudice of USPS in this case. *See* Dkt. 14, Decl. ¶ 12. And she promptly made efforts to serve the appropriate offices upon receipt of USPS's motion. *See Klein*, 2019 WL 1284270, at *3 (distinguishing plaintiff's good-faith efforts to serve the Buffalo United States Attorney's Office before and after discovering the deficiency in service from the plaintiff in *Zapata* who waited two months after the defendant's motion to dismiss to seek extension to properly serve defendants).

This Court acknowledges that the factors are evenly balanced in this case. Nevertheless, the Court, in its discretion, grants the Rule 4(m) extension here. On this issue, the Court considers that the Second Circuit has stated that it would not be an abuse of discretion for the district court, even in the absence of good cause, to grant an extension of time to serve where "the dismissal without prejudice in combination with the applicable statute of limitations would result in a dismissal *with* prejudice," provided there are "sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." *Zapata*, 502 F.3d at 197 (italics in original); *see B.J.S. v. State Educ. Dep't/Univ. of State of N.Y.*, No. 07-CV-456A(F), 2011 WL 3651051, at *11-12 (W.D.N.Y. Aug. 18, 2011), *report and recommendation adopted*, 2011 WL 4549192 (W.D.N.Y. Sept. 29, 2011).

On balance, this Court denies Defendant's motion to dismiss, grants Plaintiff an extension of time for service until the date that service was complete on the United States, and declares Plaintiff's late service on Defendant is effective *nunc pro tunc.*

## III. MOTION TO SUBSTITUTE

As discussed above, the FTCA provides a limited waiver of the United States' sovereign immunity and does not authorize lawsuits against federal agencies. *See* 28 U.S.C. § 2679(a); *see, e.g.*, *Jones v. Fed. Bureau of Investigations*, No. 6:19-cv-06752(MAT), 2019 WL 5550520, at *2 (W.D.N.Y.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Oct. 28, 2019) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)). Thus, this action must be brought against the **United States**, not USPS. *See Klein*, 2019 **WL** 1284270, at *4. Plaintiff concedes that the **United States** is the proper party defendant. Dkt. 21, at 3. Accordingly, Defendant's motion to substitute the **United States** for the USPS is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion (Dkt. 8) to set aside the default is granted and Defendant's motion to dismiss is denied. Plaintiff's cross motion to determine that service is proper (Dkt. 14) is granted, and the Court declares Plaintiff's late service of the Buffalo **United States** Attorney and the Attorney General effective *nunc pro tunc*. Defendant's motion to substitute (Dkt. 18) is granted. The Clerk of Court is instructed to substitute the **United States** as a party for the **United States Postal Service**.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2465086

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1789593
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Alexander McFADDEN, Plaintiff,
v.
Jose D. ORTIZ, Executive Officer Chase JP Morgan Chase & Co., and James Simon, Manager Chase JP Morgan Chase & Co., Defendants.

No. 5:12–CV–1244 (MAD/ATB).
|
April 26, 2013.

**Attorneys and Law Firms**

Alexander McFadden, Pine City, NY, pro se.

Jose D. Ortiz, Executive Officer for Chase JP Morgan Chase & Co., Houston, TX.

James Simon, Manager for Chase JP Morgan Chase & Co., New York, NY.

## MEMORANDUM–DECISION AND ORDER

MAE A. D'AGOSTING, District Judge.

## I. INTRODUCTION

***1** Plaintiff *pro se* Alexander McFadden ("McFadden"), an inmate at the Southport Correctional Facility ("SCF"), filed this action pursuant to 42 U.S.C. § 1983. In his complaint, Plaintiff appears to allege that Defendants, two executives of Chase JP Morgan Chase & Co. ("Chase"), violated his constitutional rights through conduct that, in some way, involved a bank account. *See* Dkt. No. 1 at ¶ 4.

On August 7, 2012, Magistrate Judge Andrew T. Baxter issued an Order and ReportRecommendation, recommending that the Court dismiss Plaintiff's complaint in its entirety with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5. Currently before the Court are Plaintiff's objections to Magistrate Judge Baxter's August 7, 2012 Order and ReportRecommendation.

## II. BACKGROUND

In his Order and Report–Recommendation dated August 7, 2012, Magistrate Judge Baxter recommended that Plaintiff's motion to proceed *in forma pauperis* ("IFP") should be denied by the Court and, upon review of the complaint, that this action be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9. Further, Magistrate Judge Baxter recommended that if the Court approves his report, the Court should certify that any appeal from this matter will not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See id.*

Regarding Plaintiff's complaint, Magistrate Judge Baxter's Order and ReportRecommendation recommends that because there is no indication that either Defendant acted under "color of state law," and because there are no allegations that either or both Defendants "conspired" with any state actors to bring this action under section 1983, Plaintiff's complaint should be dismissed. *See* Dkt. No. 5 at 5.

Regarding Plaintiff's claim that Defendants violated New York Penal Law by offering false documents for filing, tampering with public records, and falsifying business records, Magistrate Judge Baxter recommended that because there is no private right of action to enforce either state or federal criminal statutes, Plaintiff is barred from bringing a claim to enforce these provisions of the New York State Criminal Law. *See* Dkt. No. 5 at 6.

Accordingly, Magistrate Judge Baxter recommended this Court hold that, due to Plaintiff's failure to state a claim under 42 U.S.C. § 1983 upon which relief can be granted, combined with the courts inability to determine what venue might be appropriate, Plaintiff's motion for IFP should be denied, and Plaintiff's complaint should be dismissed in its entirety with prejudice pursuant 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9.

In his "objections" to Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff simply provides the Court with language from various cases discussing various types of objections and the Court's authority to review unpreserved errors. *See* Dkt. Nos. 14, 15.

## III. DISCUSSION

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**A. Review of a magistrate judge's decision**

***2** If a party files specific objections to a magistrate judge's report-recommendation, the district court performs a *"de novo* determination of those portions of the report of specified proposed findings or recommendations to which objections is made." 28 U.S.C. § 636(b)(1) (2006). However, if a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that were presented] to the magistrate judge," the court simply reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). At the conclusion of the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B. *In Forma Pauperis* application**

In order for a plaintiff to proceed without payment of any fees, he must first meet the financial criteria for IFP status. *See* 28 U.S.C. § 1915(a)(1). The plaintiff must submit an affidavit, including a statement of all assets, establishing his inability to pay the filing fee of $350.00. *See id.* Here, Plaintiff submitted a standard IFP application form, but answered only some of the relevant questions. Furthermore, while Plaintiff is incarcerated and has filed a motion to proceed IFP, his application states that, in the past twelve months, he has had income from "[b]usiness, profession or other self employment," and has "millions of dollars" in "cash, checking or savings accounts." *See* Dkt. No. 2 at ¶¶ 3, 4. Plaintiff, however, does not answer the question that asks him to "describe the source of money and state the amount received and what you expect you will continue to receive ." *See id.* at ¶ 3. Plaintiff answers "yes" to the questions asking whether he owns "real estate, stocks, bonds, securities, other financial instruments, automobile or any other assets." *See id.* at ¶ 5. Once again, however, Plaintiff does not complete the question by describing the property and stating its value. *See id.* Lastly, the form indicates that Plaintiff only has $9.60 in his prison account, and that during the last six months prior to this application, the average balance in his prison account was $4.03. *See* Dkt. No. 2 at 2.

If Plaintiff's claims are true and he does in fact have millions of dollars and real estate or other valuable property, then he cannot meet the financial requirements for proceeding IFP. Generally, when plaintiff has failed to properly complete the IFP request, the court will deny IFP without prejudice and allow plaintiff to resubmit the form with proper information. However, in this case, based upon the inadequacy of Plaintiff's responses, combined with his failure to state a plausible cause of action and the fact that amendment would be futile as discussed below, even if Plaintiff met the financial requirements for IFP, the Court would still find dismissal of this action to be proper.

**C. Sufficiency of the complaint**

***1. Legal Standard***

***3** In addition to determining whether Plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if it determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

***2. Application***

***a. Color of state law***

Plaintiff brings this complaint pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. To state a claim under section 1983, a plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges as secured by the Constitution of the United States. *See Annis v.* County of Westchester, 136 F.3d 239, 245 (2d Cir.1998). Under extremely limited circumstances not alleged here, private actors, such as Defendant, may be held liable under section 1983. *See White v. Monarch Pharmaceuticals,* Inc., No. 08–CV–0430, 2009 WL 3068217, *1 (2d Cir. Sept. 28, 2009); *see also Rendell—Baker v. Kohn,* 457 U.S. 830, 838–42 (1982). The law does not reach private conduct, no matter how "discriminatory or wrongful." *Annis,* 136 F.3d at 245 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982)).

In the present matter, Plaintiff names two executives of Chase as Defendants. Along with being very difficult to determine what these Defendants allegedly did to Plaintiff, there is no indication that either Defendant acted under color of state law. Moreover, the complaint does not allege or suggest that Defendants conspired with a state actor to violate his constitutional rights. Further, Plaintiff does not allege any conduct attributable to either Defendant sufficient to establish

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

their personal involvement in any alleged constitutional deprivation. *See* *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted).

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss the complaint.

***b. Criminal statutes***

Plaintiff states in the "Causes of Action" section of his complaint that Defendants violated the New York Penal Law regarding falsifying business records, tampering with public records, and offering false documents for filing. *See* Dkt. No. 1 (citing N.Y. PENAL LAW §§ 175.10, 175.25, and 175.35). Even if this is true, however, there is no private right of action to enforce either state or federal criminal statutes. *See* *Abrahams v. Incorporated Village of Hempstead,* No. 08–CV–2584, 2009 WL 1560164, *8 (E.D.N.Y. June 2, 2009) (holding that dismissal of civil suit for perjury was proper because there is no private right of action for perjury under New York Law). Therefore, even assuming, *arguendo,* that Defendants violated some criminal statutes, Plaintiff may not bring a claim based on those statutes to enforce New York Criminal Law.

***4** As such, Magistrate Judge Baxter correctly recommended the Court find that Plaintiff has failed to allege a plausible cause of action.

***c. Venue***

Venue in federal-question cases is generally determined by 28 U.S .C. § 1391(b) which provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). In this case, one of the Defendants is listed with a Houston, Texas address, while the other Defendant is listed as having a New York City address. *See* Dkt. No. 1 at ¶¶ 3(a) and (3)(b). Thus, neither of the Defendants reside, or are located, in the Northern District of New York. Plaintiff is incarcerated at Southport Correctional Facility, located in the Western District of New York. Therefore, since both Plaintiff and one of the Defendants are New York residents, this case could clearly not be brought as a diversity action. Moreover, under Plaintiff's section 1983 claim, venue is not proper in the Northern District of New York. All Defendants do not reside in the same state, neither Defendant is located in this district, and the complaint does not allege any conduct that occurred in the Northern District of New York.

Under 28 U.S.C. § 1406, a district court faced with a case brought "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Second Circuit has suggested that "a district court should not dismiss for improper venue on its own motion except in extraordinary circumstances." *Concession Consultants, Inc. v. Mirisch,* 355 F.2d 369 (2d Cir.1966).

In the present matter, the Court finds and agrees with Judge Baxter's Order and ReportRecommendation that this case presents precisely the extraordinary circumstances making it proper for the Court to dismiss for improper venue *sua sponte.*

***d. Leave to amend***

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ." *Id.* (citation omitted); *see also* *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

***5** Here, the Court agrees with Magistrate Judge Baxter that any attempt by Plaintiff to amend his complaint would be futile. As discussed, although Plaintiff alleges "due process violations," section 1983 does not permit such actions to be brought against private individuals absent some involvement by the state. Moreover, Plaintiff does not have the right to enforce New York State criminal statutes.

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss Plaintiff's complaint with prejudice.

## IV. CONCLUSION

After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's August 7, 2012 Order and Report–Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further **ORDERS** that Plaintiff's application to proceed *in forma pauperis* is **DENIED;** and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2013 WL 1789593

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3518439
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,
v.
CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 04/13/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, 841 Western Avenue, Apartment 2A, Albany, New York 12203, Plaintiff pro se.

## REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

### I. In Forma Pauperis

***1** Plaintiff pro se Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. See Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keshia Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

The Court has reviewed plaintiff's IFP application and determines that she financially qualifies to proceed IFP for purposes of filing only. [1]

### II. Legal Standards

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting her to proceed with her action. As plaintiff is representing himself, the court must afford plaintiff special solicitude; thus, it is to consider her claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

***2** Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later

> pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

## III. Initial Review

### A. Plaintiff's Complaint

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, et seq. On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." Id.

Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. Included with the exhibits to the complaint is an Equal Employment Opportunity Commission ("EEOC") dismissal notice [2] noting that plaintiff's EEOC charge was not timely filed and the EEOC was closing its file. Dkt. No. 1-1. The remainder of the exhibits appended to the complaint appear to be an 80-page letter relating to apparent visa fraud that plaintiff sent to The US Department of Justice; the United States Department of Homeland Security, Immigration and Customs Enforcement; and the Federal Bureau of Investigation; as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff. Dkt. No. 1-2 at 81-82.

***3** The supplement plaintiff filed on March 15, 2021, is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. Id. The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021, appear to be letters plaintiff sent to the New York State Department of Labor, United States

Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." See dkt. no. 7.

Plaintiff's complaint discusses Allison Carolyn Rattray, the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. Id. Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill the employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." Id. at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," force plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. Id. at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom stables has visual and audio devices inside of them." Id. at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. See generally Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was celebrated, that is Easter and Good Friday.

Id. at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC FirstCarribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

Id. at 14.

As for plaintiff's causes of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

***4** Dkt. No. 1 at 69. As for a second cause of action is

> employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

> CIBC had be fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

Id. at 70. Third cause of action is listed as employment discrimination - compensation: denied increases in my salary verbally communicated to be by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to be my Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt." Id. In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2)An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

Id. at 71.

### B. Analysis

First, plaintiff's complaint fails to meet the pleading requirements of Rules 8 and 10. Her complaint does not present a short and plain statement of the claim showing that she is entitled to relief. FED. R. CIV. P. 8. Further, she does not present her claims in numbered paragraphs, limited to one "circumstance" per paragraph. FED. R. CIV. P. 10. Instead, her complaint is a lengthy, disjointed, difficult to follow narrative. Her complaint clearly "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales, 167 F.R.D. at 355.

Second, plaintiff's claims, insofar as she seeks to bring them under Title VII are (1) barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII.[3] To the extent plaintiff suggests that she was discriminated against in violation of Title VII insofar as she was told that she was inadequate due to her race or denied promised promotions because of her race, dkt. no. 1 at 70, even if plaintiff could provide additional factual support and clarification for the alleged discrimination, plaintiff provides that the alleged discrimination occurred as early as 1995 until 2004, and would be beyond the statute of limitations of Title VII. Indeed, plaintiff's entire employment with defendant occurred outside of the statute of limitations as she suggests that her employment began in January 1995 and that she was terminated in March 2009. Dkt. No. 1 at 52-53. Thus, the complained-of actions occurred more than 300 days prior to when plaintiff appears to have filed a complaint with the EEOC. See Gunning v. New York State Just. Ctr. for Prot. of People with Special Needs, No. 1:19-CV-1446 (GLS/CFH), 2020 WL 5203673, at *3 (N.D.N.Y. Sept. 1, 2020) ("Title VII's statute of limitations bars claims based upon events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency, and, therefore, "[a] plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e–5(e)(1).") (quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)). The undersigned notes that plaintiff does not indicate when she filed a complaint with the EEOC. However, she submits the EEOC's dismissal letter, dated September 10, 2020, which states that plaintiff did not timely file a complaint with the EEOC. Dkt. No. 1-1. As plaintiff likely filed her EEOC complaint in 2020,[4] appears to have been last employed by defendant in 2009, and complains of alleged employment discrimination occurring as early as 1995, her filing of an EEOC complaint in 2020 is clearly more than 300 days after the alleged discrimination occurred. Thus, any cognizable Title VII claims arising out of her employment with defendant are barred by the statute of limitations.

***5** However, even if the statute of limitations was not an issue, plaintiff's claims still must fail because plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails establish this Court's jurisdiction under federal question or diversity jurisdiction.[5] Plaintiff makes several disjointed,

confusing claims about being sold as a prostitute against her will by defendant's employees and other nonparties, defendant's employees and others murdering innocent people, defendant's employees drinking plaintiff's blood, and being stalked and prostituted by various officials from Jamaica and employees of defendant's company. See generally dkt. nos. 1, 4, 6, 7. Plaintiff makes several allegations against her former supervisor, Ms. Rattray, and says the various physical wrongdoings Ms. Rattray committed against plaintiff were all due to "The employment agreement between The Plaintiff and CIBC FirstCarribean Jamaica." Dkt. No. 1 at 60-61. Although plaintiff's submissions seem to suggest that she was employed by defendant at some point in time, and that a supervisor told her she could not be a lawyer due to her race and denied promised salary increases for unclear reasons, nothing about the factual allegations pleadings suggest that she presents a valid employment discrimination claim under Title VII or any other statute.

The Court is at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in murder scheme that is somehow related to her Easter birthday. See Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

Further, to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction. See generally Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); McFadden v. Ortiz, 5:12-CV-1244(MAD/ATB), 2013 WL 1789593 (N.D.N.Y. Apr. 26, 2013) (noting that there is no private right of action to enforce either state or federal criminal statutes).

Next, plaintiff files an "emergency motion" for the Death Penalty, [6] which appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a lease [sic]," and other similar allegations. See Dkt. No. 5. As discussed above, this Court does not have the authority or jurisdiction to sua sponte impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial.

***6** Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once" "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may sua sponte dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

the complaint.' " Aguilar v. United States, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint."). Thus, although the Court must show special solicitude to pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and is to exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.

Even if, arguendo, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." See Bennett v. Mnuchin, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describ[e] fantastic or delusional scenarios."); Brown v. New York State Educ. Dept., 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing pro se plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be granted for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (dkt. no. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be **DISMISSED**; and it is further

**RECOMMENDED**, that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be **DISMISSED AS MOOT**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [7]

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3518439

## Footnotes

1 Plaintiff is still financially responsible for any other fees or costs she may incur.

2 It appears that the EEOC dismissal notice is dated September 10, 2020. Dkt. No. 1-1.

3 A plaintiff establishes "a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) overruled on other grounds Zarda v. Altitude Express, Inc., 883 F.3d 100 (2d Cir. 2018).

4 As the EEOC dismissal notice is dated September 10, 2020, the Court makes the reasonable inference that plaintiff filed her EEOC complaint some time in 2020.

5 Even if this Court were to assess this case as seeking to proceed under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), the plaintiff has also failed to set forth a cognizable state law claim. Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332(a)) (noting that diversity jurisdiction "confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.' ").

6 This "emergency motion" notes that it is presented to the United States Supreme Court, but contains a caption including this Court. It is unclear if this is a document plaintiff intends to submit before this Court, or before the United States Supreme Court. See dkt. no. 5.

7 If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3204860
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,
v.
CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 07/29/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, Albany, NY, Pro Se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

***1** This case was before the Hon. Christian F. Hummel, United States Magistrate Judge, for an initial review of plaintiff's complaint and other filings pursuant to 28 U.S.C. § 1915(e)(2)(B). Judge Hummel recommends that plaintiff's complaint (dkt. no. 1) be dismissed with prejudice; that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed; and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *See* April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Plaintiff did not file objections directed to Judge Hummel's recommendations, and the time to do so has expired. Plaintiff did, however, file an amended complaint. For the reasons that follow, the Court adopts Judge Hummel's recommendations, and independently reviews plaintiff's amended complaint and finds it fails to assert viable causes of action.

## II. DISCUSSION

### a. Complaint

As Judge Hummel explains, plaintiff *pro se* Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. *See* Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keisha Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted an additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, *et seq.* On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." *Id.* Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. The exhibits include an 80-page letter relating to apparent visa fraud that plaintiff sent to the US Department of Justice, the United States Department of Homeland Security, Immigration and Customs Enforcement, and the Federal Bureau of Investigation, as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff.

The supplement plaintiff filed on March 15, 2021 is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before the Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. *Id.* The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State

incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021 appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." *See* dkt. no. 7.

***2** Plaintiff's complaint discusses Allison Carolyn Rattray, allegedly the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. *Id.* Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." *Id.* at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," forced plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. *Id.* at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom staples [sic] has visual and audio devices inside of them." *Id.* at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. *See generally* Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was celebrated, that is Easter and Good Friday.

*Id.* at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC First Carribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

*Id.* at 14.

As for plaintiff's first cause of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

Dkt. No. 1 at 69. As for a second cause of action is

> employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at CIBC had me fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

*Id.* at 70. The third cause of action is listed as

> employment discrimination - compensation: denied increases in my salary verbally communicated to me by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to me by Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt.

*Id.* In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2) An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

*Id.* at 71.

Judge Hummel found (a) that plaintiff's complaint fails to meet the pleading requirements of Fed. R. Civ. P. 8 and 10, *see* Dkt. 10 at 8-9; (b) plaintiff's claims under Title VII (1) are barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII, *see id.* at 9-10; and (c) apart from the Title VII claims, “plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails [to] establish this Court's jurisdiction under federal question or diversity jurisdiction.” *Id.* at 10. Judge Hummel indicated that he was

> ***3** at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed “spying devices” into plaintiff's body, forced her to undergo various injections, and involved plaintiff in a murder scheme that is somehow related to her Easter birthday. *See* Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as “an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray” (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

*Id.* at 11.

Judge Hummel also concluded that to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. *Id.* at 11-12.

As to plaintiff's “emergency motion” for the Death Penalty, Judge Hummel found that it appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in “drug assisted surgeries on The Plaintiff herein to induce The Coronavirus

ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a lease [sic]," and other similar allegations. *See* Dkt. No. 5. Judge Hummel concluded that "this Court does not have the authority or jurisdiction to *sua sponte* impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial." Dkt. 10 at 12.

Judge Hummel concluded that although the Court must show special solicitude to *pro se* litigants, and is to exercise "extreme caution ... in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *id.* at 14 (quoting *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted)), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis. Id.* Judge Hummel concluded:

> Even if, *arguendo*, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." *See Bennett v. Mnuchin*, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describ[e] fantastic or delusional scenarios."); *Brown v. New York State Educ. Dept.*, 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing *pro se* plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

***4** *Id.* at 14. As indicated above, Judge Hummel also recommends that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed, and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *Id.* at 15.

After examining the record, this Court has determined that the recommendations in the Report-Recommendation and Order are not subject to attack for plain error or manifest injustice. Further, even if plaintiff's amended complaint is treated as an objection, the Court has completed a *de novo* review and has determined to adopt Magistrate Judge Hummel's recommendations for the reasons stated in his report.

**b. Amended Complaint**

As indicated, plaintiff filed an amended complaint after Judge Hummel recommended that the complaint be dismissed with prejudice. After a review of the amended complaint, the Court finds that it too must be dismissed with prejudice.

Plaintiff's amended complaint is a form Title VII complaint. *See* dkt. no. 11. She indicates that the defendant is "CIBC Limited/Michael Capatide CEO CIBC." *Id.* at ¶ 3(b).[1] Plaintiff checks the boxes indicating that the defendant discriminated against her on account of her "race or color," "religion," "sex (or sexual harassment)," "national origin," and "other" indicating on the line that follows: "my right to marry; my right to life; my right to work and provide for my daily living expenses." *Id.* at ¶ 6. Where plaintiff is asked to indicate what the complained-of conduct involves, she checked the boxes for "failure to employ," "termination of employment," "failure to promote," "unequal terms and conditions of employment," "retaliation," and "other acts as specified below" after which she writes: "I am being sex trafficked by CIBC First Caribbean staff in lieu of my salary." *Id.* at ¶ 7. In the section of the amended complaint asking for the facts underlying her claims, plaintiff asserts she is being sex trafficked because she was born on Easter and that the sex trafficking is in lieu of her salary paid to her by CIBC First Caribbean Jamaica." *Id.* ¶ 8. She also asserts that "the force" of the Jamaican Police, the Jamaican Judiciary, the Jamaican Hospital, and the University of the West Indies are conspiring with her "Walker relatives used to commit crimes with my identity using identity theft of Myrna Suzette Walker employed by Jamaican government Judge Barrington Andrew Rattray & Allison Carolyn Rattray." *Id.* In addition, she asserts that "Adethia Keisha Fitten is physically cutting me to create presumed consent for the crimes organized by Judge Barrington Andrew Rattray." *Id.*

The First Cause of Action alleges "forced organized criminality using the salary that was paid to the plaintiff by CIBC First Caribbean Jamaica January 1, 1995 to March 28, 2009." It also asserts that Myrna Suzette Walker "is a


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

thief," and that "Allison Carolyn Rattray ... hired Myrna Suzette Walker and her five (5) children and Adethia Keisha Fitten to steal and to say that the stealing was done by the plaintiff." Plaintiff also appears to indicate that "to do the stealing," Myrna Suzette Walker "and others" repeatedly physically injure plaintiff. As discussed by Judge Hummel, these allegations do not provide plaintiff with a timely Title VII cause of action, *see, e.g.,* Am. Compl. attach. 4, dkt. no. 11-4 at 1,[2] nor do they provide a basis for the relief plaintiff seeks. *See* Dkt. 11, at 5.[3]

***5** The Second Cause of Action asserts violations of the "Human Rights Act of 1998." The Human Rights Act of 1998 appears to be a law or act of Parliament in the United Kingdom. *See Brady v. Wks. Med. Ctr.*, No. 19-CV-00655-SM, 2019 WL 6529870, at *2 (D.N.H. Nov. 12, 2019)("A law in effect in the United Kingdom bears that title.")(citing Human Rights Act 1998, ch. 42, http://www.legislation.gov.uk/ukpga/1998/42/contents), *report and recommendation approved*, No. 19-CV-655-SM, 2019 WL 6529459 (D.N.H. Dec. 4, 2019); *Simpson v. Dauphin Cty. Hous. Auth.*, No. 1:16-CV-01747, 2017 WL 2375702, at *2, n. 4 (M.D. Pa. Apr. 26, 2017) ("Simpson also references a 'Human Rights Act of 1998,' which as best we can tell refers to an Act of Parliament of the United Kingdom, not applicable in this jurisdiction."), *report and recommendation adopted*, No. 1:16-CV-1747, 2017 WL 2362510 (M.D. Pa. May 31, 2017). The Human Rights Act of 1998 does not provide plaintiff with a viable cause of actions against the defendant for any events occurring in the Northern District of New York over which this Court would have jurisdiction. *See Brady*, 2019 WL 6529870, at *2.

The Third Cause of Action is confusing but appears to be a claim seeking unpaid wages. *See* dkt. no. 11 at 4 (stating at the start of Third Cause of Action: "The right to my paycheck."). Plaintiff asserts that her aunt Myrna Suzette Walker "assisted by CIBC First Caribbean staff Allison Carolyn Rattray has been falsely selling me as a whore in lieu of my current income(s) from JC Penney, Aerotek, Walmart, Fidelis Care and more." However, Myrna Suzette Walker, Allison Carolyn Rattray, JC Penney, Aerotek, Walmart, or Fidelis Care are not defendants in this action. Further, plaintiff does not assert when it was that she worked at JC Penney, Aerotek, Walmart, or Fidelis Care, or when or where it was that Myrna Suzette Walker and Allison Carolyn Rattray purportedly took actions preventing plaintiff from receiving her wages from these employers. The claim in this regard fails to assert a viable cause of action under Title VII. In addition, in nearly incomprehensible fashion plaintiff ends the Third Cause of Action by asserting: "The rapes of me by co-workers is [sic] recorded and published. Walmart staff a [sic] man named Donnell she [sic] gave permission to live in my apartment as well as Fidelis Care Health Insurance staff- Rashid Rardon." These allegations fail to provide a sufficient basis for the Court to discern any viable cause of action under Title VII or any other law or statute over which the Court would have jurisdiction.

Accordingly, for the reasons set forth above plaintiff's amended complaint will be dismissed. Because the allegations in the amended complaint are factually frivolous, and because plaintiff filed an amended complaint that did not cure the pleading defects pointed out by Judge Hummel, dismissal will be with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be futile.

## III. CONCLUSION

For the reasons discussed above, the Court **ACCEPTS AND ADOPTS** Judge Hummel's recommendations in the April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Thus, it is hereby

**ORDERED** that plaintiff's complaint (dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) is **DENIED and DISMISSED**; and it is further

**ORDERED** that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) is **DENIED and DISMISSED as moot**.

Based on the Court's review of the amended complaint, it is hereby

**ORDERED** that plaintiff's amended complaint (dkt. No. 11) is **DISMISSED with prejudice**.

The Clerk of the Court may mark this file as closed.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3204860

## Footnotes

1 At paragraph 3(a) asking to identify the defendant, plaintiff writes: “Not Applicable”

2 Dkt. no. 11-4 is a letter from Maureen Kielt, Director of the EEOC Buffalo Local Office to plaintiff in the matter of *Walker v. CIBC* confirming that plaintiff indicated that her “last date of harmed occurred on March 24, 2009, when [she] was terminated,” thus making her EEOC administrative claim against CIBC untimely. Dkt. No. 11-4 at 1.

3 In the Prayer for Relief, plaintiff requests the Court to grant the following relief:

> 1. The plaintiff do not [sic] want to be a party to the religious killing business of Myrna Suzette Walker; her five children; and CIBC First Caribbean Jamaica staff, Allison Carolyn Rattray and her husband Judge Barrington Andrew Rattray, Supreme Court of Jamaica;
>
> 2. The plaintiff do not [sic] want cocaine nor any thing to ingest from anyone, by force or otherwise.
>
> 3. The plaintiff wants full restitution socially, physically, professionally.

Dkt. 11, at 5 (emphasis in original).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.